Filed 2/6/23  P. v. Molina CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SAMUEL JOSE MOLINA,<br><br>    Defendant and Appellant. | F076855, F079353, F082641<br><br>(Super. Ct. No. VCF309326A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Gary L. Paden, Judge.

Scott N. Cameron, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In 2014, appellant Samuel Jose Molina got into a verbal and then physical altercation with Oscar Ayo. Appellant's codefendant, Frankie Luna, joined in the fight, and either appellant or Luna fatally stabbed Ayo.

Luna is not a party to this appeal. In 2016, Luna accepted a deal and he pleaded no contest to a charge of voluntary manslaughter. The plea agreement had an indicated prison sentence of 11 years.

In 2017, appellant went to trial and a jury convicted him of second degree murder for Ayo's death (Pen. Code, § 187, subd. (a)).[1] The jury found true that appellant had committed this crime to further a criminal street gang (§ 186.22, subd. (b)). Appellant was sentenced to prison for 15 years to life.

On appeal, the parties now agree that appellant should be retried because the jury was told it could find him guilty of murder, in part, based on the natural and probable consequences doctrine.[2] That theory of guilt, however, is no longer permissible in California. Based on this record, we agree with the parties that it is impossible to determine whether or not appellant was convicted on a legally valid theory. As such, appellant's criminal judgment must be reversed in its entirety, and this matter remanded for further proceedings, including the possibility of a new trial.

## BACKGROUND

Because we agree with the parties that appellant's judgment must be reversed and this matter remanded for further proceedings, we provide only a brief summary of the

---

[1]     All future statutory references are to the Penal Code unless otherwise noted.

[2]     Under the natural and probable consequences doctrine, an aider and abettor could be found guilty not only of the intended, or target, crime but also of any other crime that a principal actually committed that was a natural and probable consequence of the target crime. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 901.)

material facts. We also summarize the procedural history of this matter, which has resulted in a consolidated appeal involving three separate but related cases.

## I.     A Brief Summary of the Material Facts from the Trial.

At trial, it was undisputed that appellant was an active Norteño gang member when this fatal stabbing occurred. The prosecution introduced expert testimony demonstrating that appellant's accomplice, Luna, was also a Norteño gang member at that time.

The jury learned that appellant had a motive to fight Ayo, at least in part, because they were both romantically involved with the same woman. On the night in question, appellant got into a verbal and then physical exchange with Ayo. Luna joined in the fight. During the altercation, Ayo was stabbed seven times, including a laceration of his heart, which resulted in his death.

The trial court instructed the jury, in part, that appellant could be found guilty of murder under the natural and probable consequences doctrine. The prosecutor argued, in part, that the jury could convict appellant of second degree murder based on this theory.

## II.     The Procedural History of this Matter.

While this appeal was pending, the Legislature substantially modified the law regarding accomplice liability for murder. (See Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).) This legislative change eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)[3] Senate Bill 1437 also significantly narrowed the felony-murder exception to the malice requirement for murder. (See §§ 188, subd. (a)(3), 189, subd. (e); *People v. Lewis* (2021) 11 Cal.5th 952, 957.) Senate Bill 1437

---

**3**     *People v. Gentile*, *supra*, 10 Cal.5th 830, was abrogated in part on another ground by Stats. 2021, ch. 551, § 2, which amended section 1172.6, subdivision (g), to expressly allow defendants whose convictions are not final to seek relief under Senate Bill 1437 on direct appeal.

created a procedure under former section 1170.95 by which a person convicted of murder under the natural and probable consequences doctrine could file a petition with the sentencing court to have the conviction vacated. (See former § 1170.95, subd. (a).) Effective June 30, 2022, section 1170.95 was renumbered as section 1172.6, with no change in its text. (Stats. 2022, ch. 58, § 10.)

### A. Appellant's petition for resentencing.

On April 15, 2019, this court granted a stay of this appeal so that appellant could petition the superior court for resentencing based on the change in law. Appellant filed a resentencing petition in the lower court, which the trial judge summarily denied. In May 2019, appellant appealed that denial to this court, and that appellate case was numbered F079353.

Upon application by appellant, this court ordered that the record was to be settled regarding what documents the lower court had reviewed in support of the denial of the initial petition. In response, the trial judge filed a settled statement in December 2019 conceding he had erred in summarily denying the petition for resentencing in light of the jury instruction regarding the natural and probable consequences theory.

### B. Appellant's renewed petition for resentencing.

On May 14, 2020, this court granted a second stay of appeal in this matter so that appellant could file a renewed petition for resentencing. Appellant filed such a petition in the lower court, and a hearing eventually occurred in April 2021. After hearing arguments, the lower court denied appellant's petition for resentencing. According to the court, substantial evidence had been introduced at trial establishing that appellant was the actual stabber. The court found that the prosecution had proven beyond a reasonable doubt that appellant was ineligible for relief.

In April 2021, appellant appealed that second denial to this court. That appellate case was numbered F082641.

## C.    The various appeals are consolidated.

Via orders issued on July 22, 2019, and June 7, 2021, this court consolidated the three appeals which appellant had separately filed with us. Appellant's opening brief addressed all three appeals. Accordingly, this opinion resolves the appeal following appellant's criminal conviction (F076855), as well as the appeals following the denials of his two petitions for resentencing (F079353 and F082641).

## DISCUSSION

## I.    Appellant's Judgment Must be Reversed and this Matter Remanded for Further Proceedings, Including a New Trial if Necessary.

It is undisputed that appellant's jury was instructed on a now legally invalid theory of conviction. In part, the court informed the jurors that they could find appellant guilty of second degree murder under the natural and probable consequences doctrine. Following legislative changes, however, this is no longer a permissible theory of guilt. (See *People v. Gentile*, *supra*, 10 Cal.5th at p. 842.)

The parties agree, as do we, that appellant suffered prejudice following this retroactive change in the law. At trial, an evidentiary conflict existed regarding who had stabbed Ayo. During closing argument, the prosecutor conceded to the jurors that the evidence did not establish beyond a reasonable doubt that appellant was the direct killer. The prosecutor further conceded it was probably Luna who had delivered the fatal wound. Nevertheless, the prosecutor asked the jury to find appellant guilty of first degree murder, contending that appellant had planned this killing in advance. In the alternative, the prosecutor asserted that appellant was guilty of murder because he had intended for Ayo to die and he had assisted Luna in stabbing Ayo. Finally, the prosecutor argued that, even if appellant had not held his own intent to kill, he could nevertheless be found guilty of murder as an aider and abettor under the natural and probable consequences doctrine. According to the prosecutor, appellant had physically assaulted Ayo knowing that another gang member, Luna, would join in the attack while possessing a knife, and it was

reasonably foreseeable Ayo's death could result. The prosecutor asserted that appellant could be guilty of murder under the natural and probable consequences doctrine even if appellant had been unaware that Luna was going to stab Ayo. The prosecutor also told the jurors that, although they needed to unanimously agree on a murder conviction, they did not need to unanimously agree on the theory underlying that conviction.[4]

As evidenced by the verdict, the jury rejected the prosecution's argument that appellant had planned this killing in advance. The jury found appellant not guilty of first degree murder but, instead, guilty of second degree murder. The verdict form does not indicate under which theory or theories the jurors found appellant guilty.

When a trial court instructs a jury on multiple theories of guilt, and one is legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground. (*People v. Aledamat* (2019) 8 Cal.5th 1, 12.) Based on this record, we accept respondent's concession that the government cannot establish beyond a reasonable doubt that this instructional error was harmless. (See *Chapman v. California* (1967) 386 U.S. 18, 24 [the beneficiary of any constitutional error bears the burden to prove it was harmless].) It is impossible to conclude that the jury convicted appellant of second degree murder based on a legally valid theory. Thus, we agree with the parties that appellant's murder conviction must be reversed, and we will likewise vacate the associated true finding regarding the gang enhancement. (See *People v. Hola* (2022) 77 Cal.App.5th 362, 377 [vacating all associated enhancements to a reversed murder conviction].)

We will remand this matter for further proceedings, including the possibility of a new trial. Under these circumstances, there are no due process or double jeopardy concerns prohibiting the possibility of a second trial because the prosecution made its

---

[4] In general, jurors need not unanimously agree on the *theory* underlying a murder verdict, but they must unanimously agree on the degree of murder. (*People v. Potts* (2019) 6 Cal.5th 1012, 1048.)

case under the law as it previously existed. (*People v. Hola*, *supra*, 77 Cal.App.5th at p. 376; *In re D.N.* (2018) 19 Cal.App.5th 898, 902.) Accordingly, while appellant is entitled to have his second degree murder conviction reversed, the prosecution is entitled to retry him on that charge based on valid legal theories.[5] (See *People v. Hola*, *supra*, 77 Cal.App.5th at p. 377.)

Finally, the parties agree that, if appellant's judgment is reversed and this matter remanded for the possibility of a new trial, then the vast majority of appellant's remaining claims in this consolidated appeal are rendered moot. We agree. Therefore, we do not summarize or otherwise address most of appellant's other contentions. However, appellant previously filed a request for judicial notice, which we will deny as explained in greater detail below. Appellant also asks us to review a *Pitchess* proceeding.[6] In the interests of judicial economy and to assist the parties on remand, we agree with appellant that it is appropriate to review the *Pitchess* documents. We turn to those remaining issues.

## II.   We Deny Appellant's Request for Judicial Notice.

On April 25, 2022, appellant filed a request for judicial notice in this court. Appellant asked us to notice the "Analysis by the Assembly Committee on Public Safety on Assembly Bill No. 333." Through the declaration of counsel, appellant provided this court with a true and correct copy of the particular document. Appellant asserted that the information contained in his request was relevant because it tended to support some of his arguments on appeal.

On April 29, 2022, we deferred ruling on appellant's request for judicial notice pending consideration of this appeal on its merits. Respondent was granted 15 days to

---

[5]   Because the jury acquitted appellant of first degree murder, he may not be retried on that charge, but he may be retried on any lesser-included offenses. (See *People v. Aranda* (2019) 6 Cal.5th 1077, 1095–1096.)

[6]   *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

file an informal response to appellant's request. Respondent, however, failed to file anything further with this court regarding this request.

Because the parties now agree, as do we, that appellant's murder conviction must be reversed due to prejudicial instructional error, his request for judicial notice involves information which is no longer relevant to a material issue. Thus, this request is now moot, and we deny appellant's request on that basis. (Evid. Code, § 452; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 ["any matter to be judicially noticed must be relevant to a material issue"].)

**III.    The Trial Court did not Abuse Its Discretion in Declining to Disclose any Records to the Defense Following the *Pitchess* Review.**

Prior to trial, appellant filed a *Pitchess* motion seeking discovery of specified personnel records of a former sheriff's detective who had investigated a prior shooting incident involving appellant. The court granted the motion and, in June 2016, it conducted an in camera hearing regarding the personnel records for this former detective. A custodian of records from the Tulare County Sheriff's Department was sworn as a witness. A reporter transcribed the proceeding. The custodian provided relevant files to the court, which it reviewed. The court ruled that no documents were responsive to appellant's *Pitchess* motion, and it declined to provide them to the defense.

In 2018, this court ordered the trial court to provide a settled record regarding the files it had reviewed during the in camera hearing. That same year, the lower court filed with us confidential electronic copies of the documents it had reviewed.

" 'A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045.' [Citation.]" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180.) "A defendant is entitled to discovery of relevant information from the confidential records upon a showing of good cause, which exists 'when the defendant shows both " 'materiality' to the subject matter

of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." [Citation.]' [Citation.]" (*Id.* at p. 180.)

When a trial court grants a *Pitchess* motion for discovery of relevant evidence contained in a law enforcement officer's personnel files, "the custodian of the records is obligated to bring to the trial court all 'potentially relevant' documents to permit the trial court to examine them for itself. [Citation.]" (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228–1229.) "A court reporter should be present to document the custodian's statements, as well as any questions the trial court may wish to ask the custodian regarding the completeness of the record." (*Id.* at p. 1229.) "A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion." (*People v. Hughes* (2002) 27 Cal.4th 287, 330.)

We have reviewed the *Pitchess* proceeding and the sealed records which the trial court examined. A court reporter was present, and the custodian was sworn prior to testifying. Thus, the court complied with the procedural requirements. (See *People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 180.) Similar to the lower court, we did not find any documents that should have been disclosed to the defense. None of the information contained in these confidential files was relevant to the subject matter involved in this pending litigation. (See Evid. Code, § 1045, subd. (a).) Therefore, the superior court did not abuse its discretion and no further action is required regarding this issue.

9.

## **DISPOSITION**

The murder conviction in count 1 is reversed and the jury's true finding regarding the gang enhancement is vacated. The judgment is reversed in its entirety. This matter is remanded for further proceedings consistent with this opinion including, if necessary, a new trial.

LEVY, Acting P. J.

WE CONCUR:


POOCHIGIAN, J.


DETJEN, J.

10.